**MICROSEMI CORP. OF COLORADO and FMC Corporation, Petitioners– Appellants,**

v.

**BROOMFIELD COUNTY BOARD OF EQUALIZATION, Respondent– Appellee,**

and

**Colorado State Board of Assessment Appeals, Appellee.**

No. 08CA0249.

Colorado Court of Appeals, Div. V.

Dec. 11, 2008.

Higgins, Hopkins, McLain & Roswell, LLC, William A. McLain, David M. McLain, Bret Cogdill, Denver, Colorado, for Petitioners–Appellants.

William A. Tuthill, III, City and County Attorney, Tami Yellico, Deputy City and County Attorney, Broomfield, Colorado, for Respondent–Appellee.

John W. Suthers, Attorney General, Lisa Brenner Friemann, Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by Chief Judge DAVIDSON.

In this property tax case, petitioners, Microsemi Corporation of Colorado and FMC Corporation (taxpayers), appeal the ad valorem tax valuation of their improved industrial property located in the City and County of Broomfield (the property) by the Board of Assessment Appeals (BAA) for the 2005 tax year. We affirm.

## I. Background

Taxpayers own a manufacturing facility located on 14.39 acres of land. Chemical solvents released in a surface-type spill contaminated the groundwater of the property and an adjacent parcel. Groundwater pumping and vapor extraction systems have been installed to treat the contamination pursuant to a Corrective Action Plan entered into by taxpayers and the Colorado Department of Health and Environment. Because the contamination and related remediation efforts are located on vacant portions of the land, use of the manufacturing facility has not been impaired.

On taxpayers' appeal from the valuation of the Broomfield County Assessor, the Broomfield County Board of Equalization (BOE) assigned an actual value of $3,388,000 for the 2005 tax year. Taxpayers then appealed to the BAA pursuant to section 39-8–108, C.R.S.2008.

At a de novo hearing, taxpayers presented expert testimony that the actual value of the property was $301,067. The expert arrived at this figure by using a market value approach, assuming a value as if clean of $3,420,000, less 70% of taxpayers' estimated cost to cure and other capital costs. Taxpayers' evidence indicated the total cost to cure the contamination was $4,214,041.

The BOE presented expert testimony that the actual value of the property was $3,330,000. The expert arrived at this figure using two alternative calculations based on the income approach. First, the expert estimated the gross annual income expected to be generated as $458,937, then subtracted 50% of the 2005 annual cost to cure to arrive at net income of $331,362, which was capitalized at a 10% rate to arrive at a value of $3,313,624. Alternatively, the expert capitalized the estimated gross annual income of $458,937 at the 10% rate to arrive at a property value of $4,590,000 as if clean, and then subtracted 50% of that expert's estimated total cost to cure to arrive at a value of $3,273,200. The BOE's evidence indicated the total cost to cure the contamination was $2,633,600.

The $1,580,441 discrepancy between the BOE's and taxpayers' estimated total cost to cure was due to the use of different discount rates.

In its order, the BAA agreed with taxpayers' argument that 70% of the total cost to cure should be applied to the property and the remaining 30% to the adjacent parcel because that allocation reflected the relevant contamination levels of the properties. Applying that adjustment to the first alternative method used by the BOE under the income approach, the BAA then recalculated the value. Specifically, for the 2005 tax year, the BAA used the BOE's projected gross annual income of $458,937, and subtracted 70% of the 2005 annual cost to cure to arrive at net income of $280,335, which was then capitalized at a 10% rate to arrive at a value of $2,803,352. This appeal followed.

## II. Standard of Review

Our review of the BAA's decision involves a mixed issue of law and fact. *See* § 24-4–106(7), C.R.S.2008. Matters of law

are reviewed de novo. *E.I. DuPont De Nemours & Co. v. Douglas County Bd. of Equalization,* 75 P.3d 1129, 1131 (Colo.App. 2003). However, we may not reweigh the evidence or substitute our judgment for that of the BAA, and we may not set aside the determination unless it is arbitrary and capricious or unsupported by any competent evidence. *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27, 34 (Colo.1990); *City & County of Denver v. Bd. of Assessment Appeals,* 802 P.2d 1109, 1111 (Colo.App.1990).

### III. Accounting for Remediation Costs

■ In its order, the BAA applied the direct capitalization method of the income approach to determine the value of the property. "Application of the income approach entails estimating income, subtracting expenses from the income, and applying a capitalization rate to the result to achieve the taxable value." *Padre Resort, Inc. v. Jefferson County Bd. of Equalization,* 30 P.3d 813, 815 (Colo.App.2001). Capitalization is simply a process of converting future monetary benefits of owning property into a value of present worth. International Association of Assessing Officers, *Property Assessment Valuation* 231 (1977). The capitalized income method takes into account the "net income generated by the property during its productive life" in order to establish a value. *State Dep't of Highways v. Mahaffey,* 697 P.2d 773, 776 (Colo.App.1984). Direct capitalization is a method of applying the income approach to convert, in one step, a single year's income estimate into a total value for the property by dividing an estimate of income by an appropriate rate. American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 471 (9th ed.1987).

On appeal, taxpayers do not contest the BAA's use of the income approach to value the property. They contend, however, that the BAA erred as a matter of law in its application of the direct capitalization method of the income approach. Specifically, relying on *E.I. DuPont* and *Mola Development Corp. v. Orange County Assessment Appeals Bd.,* 80 Cal.App.4th 309, 95 Cal.Rptr.2d 546 (2000), cited by the division in *E.I. DuPont,*

75 P.3d at 1132, they contend that the BAA should have determined the property's value as if clean and then deducted 70% of the total cost to cure as a lump sum. We disagree. Neither case mandates this methodology.

To the contrary, in *E.I. DuPont,* the question raised was an issue of first impression as to whether a deduction of governmental ordered remediation costs was required when determining the value of contaminated property for ad valorem tax purposes. *Id.* at 1132. The division held that it was. Nowhere in its opinion, however, did the division address the exact manner in which costs were to be deducted under the income approach, mandate any specific methodology, or deduct the entire cost of remediation, as taxpayers urge us to do. Rather, the division affirmed the BAA's assessed value of $315,000, arrived at by considering both current earnings and remediation costs, despite estimated remediation costs well in excess of the value of the property as if clean. *Id.*

*Mola* is similarly inapplicable. There, the court approved of the valuation of a contaminated property by deducting present value cleanup costs. However, unlike here, the property involved was vacant, unimproved commercial property, and the court expressly limited its ruling to non-income producing properties, not to "other kinds of property, such as industrial property already generating a large income stream." 80 Cal.App.4th at 311 n. 1, 327, 95 Cal.Rptr.2d at 548 n. 1, 559 ("Again, we stress that we only decide the case before us, which involves non-income-producing real property."). The issue addressed here—deduction of remediation costs in valuing property capable of generating income when using the income approach—was not discussed.

Taxpayers have not brought to our attention any other Colorado case law or statutory authority prohibiting the methodology used here by the BAA. Furthermore, the methodology used by the BAA—estimation of annual income, subtraction of an annual cost to cure, and application of a capitalization rate to arrive at a taxable value—is in conformity with the direct capitalization method of the income approach. Moreover, its assessment is supported by competent evidence in the

record. Thus, contrary to taxpayers' argument, we have no basis to conclude that the BAA erred as a matter of law in valuing the property.

Finally, we note that, even if the BAA had applied taxpayers' preferred approach by valuing the property as if clean and then deducting the total cost to cure (which was the alternative analysis proffered by the BOE's expert), using the BOE's estimates, unchallenged by taxpayers here—$4,590,000 less $1,843,520 for a value of $2,746,480—the result is a value quite similar to that reached by the BAA.

The order is affirmed.

STERNBERG * and NEY *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.