NOT DESIGNATED FOR PUBLICATION

No. 119,703

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-appellee*,

v.

BILLY L. HAZELTON SR.,
*Appellee/Cross-appellant*.

MEMORANDUM OPINION

Appeal from Brown District Court; JAMES A. PATTON, judge. Opinion filed January 10, 2020.
Affirmed.

*Kevin M. Hill*, county attorney, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee/cross-appellant.

Before BUSER, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Billy L. Hazelton presented two motions to the district court at the time of his sentencing—one for a downward durational departure of his sentence and a second for a dispositional departure from presumptive prison to supervised probation. The district court granted Hazelton's motion for a downward durational departure sentence to 26 months from the standard midrange guideline sentence of 40 months as set out in the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq., but denied his motion for a dispositional departure to supervised probation. Now the State appeals the district court's grant of a downward durational departure and Hazelton

1

cross-appeals the denial of his downward dispositional departure motion. Upon review of the record, we observe no error or abuse of discretion by the district court.

We affirm.

FACTS

Officers responded to a call from Hazelton's girlfriend who claimed Hazelton threatened her and pulled a gun on her. The officers entered Hazelton's house to retrieve the weapon and, in doing so, saw several metal grinders and other items appearing to contain illegal drugs. Officers then sought and obtained a search warrant for Hazelton's house. Upon executing the search warrant, they found a Bic pen with white residue, several plastic bags containing white residue, and e-cigarette vaporizers. The plastic bags and e-cigarette vaporizers tested positive for methamphetamine.

Initially, the State charged Hazelton with three felonies and one misdemeanor. Hazelton waived his right to a preliminary hearing and the case was set for arraignment. At arraignment, a plea agreement was announced reflecting Hazelton would plead guilty or no contest to possession of methamphetamine, a drug severity level 5 felony; an amended count of domestic battery, a class B person misdemeanor; and possession of drug paraphernalia, a class A nonperson misdemeanor. In exchange, the State would dismiss the possession of cocaine charge. After the court explained all of the rights he would be waiving by entering a plea, Hazelton pled no contest to possession of methamphetamine, domestic battery, and possession of drug paraphernalia.

The district court found Hazelton was mentally competent, his no-contest pleas were freely and voluntarily entered into, and the State provided a sufficient factual basis to find Hazelton guilty. The district court ordered a presentence investigation (PSI) report which determined Hazelton's criminal history score was A. The PSI reflected Hazelton's

2

primary offense—possession of methamphetamine—called for a presumptive imprisonment range of 37-40-42 months. See K.S.A. 2018 Supp. 21-6805(a).

Before sentencing, Hazelton filed a motion for downward dispositional and durational departure. In support, Hazelton argued, under K.S.A. 2018 Supp. 21-6815(c)(1)(E), the degree of harm attributed to his current crimes was significantly less typical because the victim of his domestic battery conviction wanted "to continue the relationship" and the "amount of methamphetamine actually obtained was a small amount." In further support, Hazelton stated he was an Army veteran, had experience working as a restaurant operator and cook, was on disability for his herniated disks, and needed to get a job in order to pay approximately $20,000 in back child support.

At his sentencing hearing, Hazelton's counsel argued substantial and compelling reasons supported Hazelton's departure motion because Hazelton's conviction for possession of methamphetamine was his first drug-related offense and the methamphetamine recovered by law enforcement was only "residue." The State objected and asked the district court to sentence Hazelton to the standard sentence of 40 months in prison for his methamphetamine conviction.

The district court denied the requested dispositional departure motion to supervised probation and granted in part the durational departure motion by imposing a reduced sentence for possession of methamphetamine of 26 months in prison subject to postrelease supervision and good time credit. In doing so, the district court found a nonstatutory factor existed to grant a durational departure, but not the dispositional departure, for Hazelton's possession of methamphetamine conviction, stating:

> "The Court finds that given the nature of your motion for downward departure that the
> Court should depart as far as the duration but not as far as the disposition, and the Court
> finds that specifically that duration has to do with the nature of the offense, *the fact that*

3

*you have no prior drug offenses but you certainly have numerous offenses and they all seem to be generated by some type of domestic disturbance, with exception of the four driving while suspended's.*" (Emphasis added.)

The district court sentenced Hazelton to 12 months in jail for possession of drug paraphernalia and 6 months in jail for domestic battery, both to run concurrent with his sentence for possession of methamphetamine.

After the district court announced Hazelton's sentence, Hazelton's counsel again asked the court for a dispositional departure and to impose a sentence of probation, stating: "Your Honor, I'm asking this Court to suspend imposition of [Hazelton's] sentence and modify it to give him 60 days in the county jail rather than the 26-month prison sentence." See K.S.A. 2018 Supp. 21-6607(b)(14) (the district court generally may impose as a condition of probation in felony cases "[confinement] in a county jail not to exceed 60 days"). The district court denied his motion, stating:

> "I've considered all of the possible sentencing requirements, and I've looked at the criminal history, and I've looked at it doesn't matter how it works. This is a sentence that in his criminal history should have been 40 months. Because it was his first drug offense the Court has given a reduction of 14 months on the standard sentence, and the Court will not reduce it anymore. The Court has looked at the overall history and the overall circumstances, and feels that this is an appropriate sentence for the violation and history that the defendant has."

The journal entry also reflects the district court granted Hazelton's downward durational departure motion because it was Hazelton's "first drug offense, [and the] degree of harm [was] less than usual."

The State timely appealed. Hazelton timely cross-appealed.

4

*No abuse of discretion in granting a durational departure.*

The State argues the district court erred when it granted Hazelton's motion for a downward durational departure because its "sole basis for granting durational departure" was Hazelton's lack of prior drug-related offenses. We recognize our standard of review for a departure motion

> "depends on the issue presented. When we consider whether the record supports an articulated reason for departing, we review for substantial competent evidence. *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). In contrast, when we determine whether a particular factor can '*ever*, as a matter of law, be substantial and compelling in *any* case,' our review is unlimited. 291 Kan. at 807. Finally, when the record supports the articulated departure reasons and the articulated reasons are legally valid, we apply an abuse of discretion standard to determine whether a particular mitigating factor constituted a substantial and compelling reason to depart. 291 Kan. at 807." *State v. Bird*, 298 Kan. 393, 397-98, 312 P.3d 1265 (2013).

A judicial action constitutes an abuse of discretion if: (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Here, the State alleges an error of law. It is the State's burden to show the district court abused its discretion. See *State v. Powell*, 308 Kan. 895, 910, 425 P.3d 309 (2018).

When a defendant has been convicted of a crime subject to the KSGA, the district court must impose the presumptive sentence provided in the KSGA unless the court finds "substantial and compelling reasons to impose a departure." K.S.A. 2018 Supp. 21-6815(a). "Substantial" means something real, not imagined; something with substance, not ephemeral. "Compelling" means that the district court is forced, by the facts of the

5

case, to leave the status quo or go beyond what is ordinary. *State v. Reed*, 302 Kan. 227, 250, 352 P.3d 530 (2015). The district court may rely on the list of nonexclusive mitigating factors in K.S.A. 2018 Supp. 21-6815(c) to determine if there are substantial and compelling reasons to depart from the presumptive sentence. The district court may also rely on nonstatutory factors to depart if those factors are consistent with the principles in the KSGA. *Bird*, 298 Kan. at 397.

Our Supreme Court has held the district court's use of the statutory factors should not be reviewed with any greater deference than nonstatutory factors. Likewise, our Supreme Court has held nonstatutory departure factors are entitled to the same level of scrutiny as the statutory factors. *State v. Martin*, 285 Kan. 735, 747, 175 P.3d 832 (2008). In *State v. Tiffany*, 267 Kan. 495, 506, 986 P.2d 1064 (1999), our Supreme Court ruled when a district court uses a nonstatutory factor, it must be consistent with the intent and purpose of the KSGA.

This court will uphold the district court's departure even when only one factor is substantial and compelling. If several factors standing alone are insufficient, this court will still uphold the district court's departure if the factors collectively constitute a substantial and compelling reason to depart. *Bird*, 298 Kan. at 398.

Hazelton argues the limited amount of methamphetamine recovered and the district court's stated reason for the downward durational departure in its journal entry—"the degree of harm was less than usual"—leads to the inference the district court relied on the degree-of-harm factor set forth in K.S.A. 2018 Supp. 21-6815(c)(1)(E) when it granted his motion for durational departure. But Hazelton concedes the district court's announcements at sentencing, not its written journal entry, govern as to the reasons for departure. Arguably, the district court relied on the degree-of-harm factor when it announced from the bench "specifically that duration has to do with the nature of the offense." See K.S.A. 2018 Supp. 21-6815(c)(1)(E) ("The degree of harm or loss

6

attributed to the current crime of conviction was significantly less than typical for such an offense."). But the record is not clear the district court specifically relied on K.S.A. 2018 Supp. 21-6815(c)(1)(E) at the time of imposing Hazelton's sentence. Therefore, we will not consider the additional statutory factor the district court included in its journal entry. See *State v. Spencer*, 291 Kan. 796, 811, 248 P.3d 256 (2011) ("'The court's comments at the time of sentencing, not the written journal entry, govern as to the reasons for departure.'").

Instead, at issue is whether the nonstatutory factor the district court announced and relied on at sentencing constitutes a substantial and compelling reason for a departure. The State asserts the nonstatutory factor the district court relied on was Hazelton's lack of a drug criminal history when it noted "the fact that [Hazelton has] no prior drug offenses . . . ." According to the State, a defendant's lack of criminal history, cannot, as a matter of law, be a substantial and compelling reason for departure.

Generally, a defendant's lack of criminal history, standing alone, is not a substantial and compelling reason for departure because criminal history has already been used to set the presumptive sentence. See K.S.A. 2018 Supp. 21-6804(a) (nondrug felony sentencing grid); K.S.A. 2018 Supp. 21-6805(a) (drug felony sentencing grid); *State v. Richardson*, 20 Kan. App. 2d 932, 941, 901 P.2d 1 (1995). But a defendant's lack of criminal history may be considered in the "overall picture." *State v. Murphy*, 270 Kan. 804, 807, 19 P.3d 80 (2001), *abrogated on other grounds by State v. Martin*, 285 Kan. 735, 175 P.3d 832 (2007). In other words, the district court may properly consider such evidence in the totality of the circumstances if other factors warrant a departure.

In looking at the totality of the circumstances, the record shows the district court considered Hazelton's lack of a drug-related criminal history along with the other convictions reflected in his criminal history when it granted Hazelton's motion for a downward durational departure. The district court recognized Hazelton's substantial

7

criminal history, stating: "[Y]ou certainly have numerous offenses and they all seem to be generated by some type of domestic disturbance, with exception of the four driving while suspended's." The district court then found the difference between his prior nondrug convictions and his current drug conviction sufficient to warrant a durational departure coupled with its later announcement at the sentencing hearing, "The Court has looked at . . . the overall circumstances and feels that is an appropriate sentence for the violation and the history that the defendant has." It did not rely on Hazelton's lack of criminal history standing alone. Indeed, it could not do so because, as the district court noted, Hazelton has "numerous offenses," and it specifically announced his drug conviction and the overall circumstances justified a reduction of the time Hazelton would spend in prison. We find the limited reasons stated by the district court are not precluded, as a matter of law, from being considered substantial and compelling mitigating factors.

Now, we must apply an abuse of discretion standard to determine if the mitigating factors are legally valid substantial and compelling reasons to depart. Again, a judicial action constitutes an abuse of discretion if: (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Marshall*, 303 Kan. at 445.

Thus, we must consider whether the district court abused its discretion when it considered the dissimilarity between Hazelton's conviction for possession of methamphetamine and his previous offenses, which generally involved domestic disturbances. In *State v. Heath*, 21 Kan. App. 2d 410, 415, 901 P.2d 29 (1995), this court held the similarity or relatedness of a defendant's previous felonies and the current crime of conviction may be substantial and compelling reasons for departure:

> "We hold both the time elapsed between the last felony and the sentencing event and the
> similarity or relatedness of previous felonies and the sentencing event may be substantial
> and compelling reasons for departure. Whether the age and lack of similarity of Heath's

8

prior offenses amounted to substantial and compelling reasons for departure must be viewed in light of the purposes of the guidelines and the facts of this case." 21 Kan. App. 2d at 415.

In *Heath*, about 16 years elapsed from Heath's last felony to the sentencing event. Here, the lapse in time between past and present convictions is not as great as in *Heath*, as Hazelton has about four years between his sentencing dates. However, *Heath* did recognize one could look at the similarity or relatedness of previous felonies. And, here, Hazelton's prior convictions are different from his current felony conviction.

The record reflects substantial and compelling reasons to depart—"because it was his first drug offense" and "the overall circumstances." Therefore, we find the district court did not base its ruling on an error of law by applying an incorrect legal framework or by considering improper facts. In making this finding, we also recognize two purposes of the KSGA sentencing guidelines are: (1) to protect public safety and (2) the reservation of prison space for the most violent offenders. See *Murphy*, 270 Kan. at 808; see also *State v. Casey*, 42 Kan. App. 2d 309, 322-24, 211 P.3d 847 (2009) (noting the Legislature's recognition that lengthy prison sentences are often not the best means for deterring subsequent drug offenses). We find no abuse of discretion by the district court in granting Hazelton a downward durational departure to 26 months' imprisonment.

*No abuse of discretion in denying a dispositional departure.*

In his cross-appeal, Hazelton argues the district court abused its discretion when it denied his motion for a downward dispositional departure to supervised probation after serving 60 days in the county jail.

The decision to depart from a sentence lies with the discretion of the sentencing court. *State v. Jackson*, 297 Kan. 110, 112, 298 P.3d 344 (2013). Again, a judicial action

9

constitutes abuse of discretion if: (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Marshall*, 303 Kan. at 445. It is Hazelton's burden to show the district court abused its discretion. See *Powell*, 308 Kan. at 910.

Hazelton does not argue the district court's decision to deny his motion for a downward dispositional departure is based on an error of law or fact. Instead, he essentially argues no reasonable person would have taken the view adopted by the district court. In support, Hazelton reiterates the mitigating factors he presented in his motion for a downward departure and at sentencing. Additionally, Hazelton argues: "It runs against the public policy of this state, and makes no sense that the taxpayers of Kansas will have to spend $20,000 to incarcerate a man in his mid-50s for eight years [*sic*], given his circumstances."

The record shows Hazelton asserted several mitigating factors in his departure motion and at sentencing. Hazelton supported his motion for a dispositional departure by alleging the degree of harm attributed to his current crimes was significantly less than typical because the victim of his domestic battery conviction wanted "to continue the relationship" and the "amount of methamphetamine actually obtained was a small amount." In further support, Hazelton stated he was an Army veteran, had experience working as a restaurant operator and cook, was on disability for his herniated disks, needed to get a job in order to pay approximately $20,000 in back child support, and was not making excuses for his actions. The district court considered the mitigating factors offered by Hazelton and heard arguments from Hazelton and the State. The district court found, based on the overall circumstances of Hazelton's case, the dissimilarity between Hazelton's conviction for possession of methamphetamine and his prior convictions justified a durational departure but not a dispositional departure to probation.

While reasonable persons might disagree as to whether a dispositional departure was also warranted, Hazelton did not meet his burden to show the district court abused its discretion. See *State v. Gant*, 288 Kan. 76, 81-82, 201 P.3d 673 (2009) (if reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said the district court abused its discretion), *abrogated on other grounds by State v. Sampson*, 297 Kan. 288, 301 P.3d 276 (2013).

Affirmed.

\* \* \*

BUSER, J., concurring in part and dissenting in part:  I concur with my colleagues' affirmance of the sentencing court's denial of Billy L. Hazelton's motion for a dispositional departure sentence. I dissent from their affirmance of the sentencing court's granting a durational departure that reduced Hazelton's presumptive Kansas Sentencing Guidelines Act (KSGA) sentence to 26 months' imprisonment.

At the outset, I believe de novo review is appropriate because "when the appellate court determines whether a particular mitigating factor may ever, as a matter of law, be substantial and compelling in any case, our review is unlimited." *State v. Theurer*, 50 Kan. App. 2d 1203, Syl. ¶ 5, 337 P.3d 725 (2014).

I would find, as a matter of law, the fact that a defendant being sentenced for a drug offense under the KSGA does not have a prior drug offense, standing alone, may never be a substantial and compelling nonstatutory mitigating factor sufficient to justify a downward departure sentence.

During the plea hearing, the county attorney summarized the State's evidence establishing the crimes of possession of methamphetamine, domestic battery, and

11

possession of drug paraphernalia. The county attorney informed the district court that officers of the Hiawatha Police Department were dispatched to a residence shared by Hazelton and his girlfriend. The officers were called to the residence because the girlfriend had reported that Hazelton

> "had threatened her and described that he had pulled a gun on her. When the [officers] arrived and made contact with [her] she stated that she had been arguing with the defendant all day, and when she indicated that she was going to call her son . . . [Hazelton] told her to hang on and then produced something that she thought was a gun from a black bag and pointed it at her."

During the investigation, the officers entered a locked room in the residence belonging to Hazelton and discovered a BB gun resembling a firearm, evidence of illegal drugs, and drug paraphernalia. Eight plastic bags and two e-cigarette vaporizers were seized for forensic analysis by the Kansas Bureau of Investigation. All 10 items tested positive for methamphetamine.

At the time of sentencing, Hazelton had a criminal history score of A. This most serious classification of criminal history was based on Hazelton's 12 prior convictions spanning 16 years—from 1997 through 2013. During these 16 years, Hazelton accrued one conviction for aggravated battery, four convictions for criminal threat, two convictions for battery, one conviction for obstructing official duty, and four convictions for driving while suspended.

The KSGA provides that with a severity level A criminal history and Hazelton's most recent conviction for the base offense of possession of methamphetamine, a drug severity level 5 felony, he should be sentenced to a presumptive term of 37 to 40 to 42 months in prison depending on the sentencing court's discretion. See K.S.A. 2018 Supp. 21-6805(a).

But the sentencing court granted Hazelton a nonstatutory durational departure because of "the fact that *you have no prior drug offenses* but you certainly have numerous offenses and they all seem to be generated by some type of domestic disturbance, with the exception of the four driving while suspended's." (Emphasis added.) As a result, Hazelton was sentenced to 26 months' imprisonment—a 14-month reduction in the standard midrange guidelines sentence of 40 months' imprisonment.

In affirming the durational departure, the majority finds that the sentencing court

"did not rely on Hazelton's lack of criminal history standing alone. Indeed, it could not do so, because as the district court noted, Hazelton has 'numerous offenses,' and it specifically announced his drug conviction and the overall circumstances justified a reduction of the time Hazelton would spend in prison. We find the limited reasons stated by the district court are not precluded as a matter of law, from being considered substantial and compelling." Slip op. at 8.

I disagree. The only nonstatutory mitigating factor relied on by the sentencing court to justify Hazelton's 14-month reduction in a presumptive KSGA sentence was that while being sentenced to a drug crime, Hazelton had no prior drug offenses. I can find no Kansas precedent to support the notion that it is a substantial and compelling reason to grant a downward departure sentence simply and solely because a defendant convicted of a drug crime did not have a prior conviction for a drug crime.

Moreover, I can find no precedent that in sentencing a defendant to a particular type of crime, the fact that the defendant has not committed that type of crime before has ever been found to be an individual mitigating factor, standing alone, sufficient to justify a downward departure sentence. Such a legal conclusion makes no sense and does not comport with the purposes of the KSGA. As a result, I would conclude that the sentencing court made an error of law in granting a durational departure based on this claimed nonstatutory mitigating factor.

13

As acknowledged by the majority:

"A substantial and compelling reason to depart downward from a presumptive sentence is a mitigating factor. In order for a mitigating factor to be substantial, the reason must be real, not imagined, and of substance, not ephemeral. In order to be compelling, the mitigating factor must be one which forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose." *Theurer*, 50 Kan. App. 2d 1203, Syl. ¶ 2.

What is the substantial and compelling reason to depart downward from a presumptive prison sentence simply because a defendant being sentenced for a drug crime does not have a prior drug conviction? Neither the sentencing court nor my colleagues have provided an explanation. Indeed, the KSGA's criminal history scoring system accounts for the presence (or absence) and severity of prior crimes and the types of crimes, so the absence of a prior drug crime in this instance would already be factored into Hazelton's criminal history score.

This is important because "[i]t is well-settled law that 'a defendant's criminal history cannot be used as justification for a departure sentence when the sentencing guidelines have already taken the defendant's criminal history into account in determining the presumptive sentence within the grid.'" *Theurer*, 50 Kan. App. 2d at 1227 (quoting *State v. Richardson*, 20 Kan. App. 2d 932, 941, 901 P.2d 1 [1995]).

Of course, there are exceptions to this general rule as set forth in *Theurer*:

"The sentencing court, however, may consider facets of the defendant's criminal history that the guidelines do not factor into the calculation of the defendant's criminal history score. For example, in *Richardson*, the sentencing court found that, depending on the facts of the case, *the lengthy period of time that elapses since a defendant's last felony conviction* may provide a substantial and compelling reason for a departure because such

14

a factor ventures 'beyond the type and number of offenses' in the defendant's criminal history. 20 Kan. App. 2d at 941." (Emphasis added.) *Theurer*, 50 Kan. App. 2d at 1227.

In *Richardson*, the defendant pled guilty to a third or subsequent conviction of driving with a suspended license, a severity level 9 nonperson felony. Our court affirmed the departure because Richardson's criminal history included three person felonies which were committed 14 years earlier when Richardson was a juvenile. 20 Kan. App. 2d at 941-42.

Similarly, as discussed by the majority, in *State v. Heath*, 21 Kan. App. 2d 410, 415, 901 P.2d 29 (1995), the sentencing court held: "[B]oth the time elapsed between the last felony and the sentencing event and the similarity or relatedness of previous felonies and the sentencing event may be substantial and compelling reasons for departure." In *Heath*, the sentencing court granted a dispositional departure because about 16 years had elapsed from the defendant's only person felony until his sentencing on the current conviction of involuntary manslaughter. Of note, a second mitigating factor was also found by the sentencing court—the victim's family had strong feelings that Heath should not be imprisoned. 21 Kan. App. 2d at 413.

*Theurer*, *Richardson*, and *Heath* stand for the proposition that, as a matter of law, a lengthy period of time that elapses since a defendant's last felony conviction until sentencing on the current case may provide a substantial and compelling reason for a departure. I agree.

But prior to the commission of Hazelton's current offenses which occurred on September 15, 2017, the defendant was last convicted of aggravated battery and criminal threat on September 9, 2013. In short, *only four years had elapsed* following Hazelton's fifth and last felony conviction for a violent crime. I would submit that the mere 4-year lapse in committing felonies in this case pales in significance to the 14- and 16-year

15

lapses in *Richardson* and *Heath*. Accordingly, *Theurer*, *Richardson*, and *Heath* provide no legal support for the durational departure granted to Hazelton.

Moreover and importantly, the sentencing court did not justify its departure on the lengthy period of time between the current drug crime and Hazelton's prior violent crimes. The sentencing court based its departure on the simple fact and sole factor that the current drug crime was *different* than Hazelton's extensive record of violent crimes against persons.

While the reasoning for the sentencing court's ruling and my colleagues' affirmance is unstated, it is also factually misplaced. The circumstances of this criminal case resulted in Hazelton being convicted of a crime of violence—domestic battery— similar to the seven crimes of violence he had perpetrated previously. In short, even if the base crime, possession of methamphetamine, was different than Hazelton's prior crimes of violence, the circumstances of this case still included elements of violence which are the hallmark of Hazelton's criminal history.

In conclusion, employing de novo review, I would find, as a matter of law, the fact that Hazelton, who was being sentenced for a drug offense under the KSGA, did not have a prior drug offense, standing alone, was not and could never be a substantial and compelling nonstatutory mitigating factor sufficient to justify a downward departure sentence. Accordingly, I would reverse the sentencing court, vacate the sentence, and remand for resentencing in accordance with the KSGA.